IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FRED HANKS,
      Petitioner,

vs.                               Case No.: 4:05cv91/MMP/EMT

JAMES R. McDONOUGH,[1]
      Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 6).  Petitioner filed a reply (Doc. 8).

This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for disposition of this matter.  *See* Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is undisputed by the parties and established by the state court record.  Following a jury trial, Petitioner was found guilty in the Circuit Court for Liberty County, Florida, of one count of sexual battery upon a victim under 12 years of age; one count of lewd, lascivious, or indecent assault on a child; and one count of lewd, lascivious, or indecent act

---

[1]James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

with a child (Doc. 1 at 1; Doc. 6, Ex. A at 59-61).  Petitioner was adjudicated guilty and sentenced to life imprisonment on the sexual battery charge and two concurrent terms of ninety-six (96) months of imprisonment on the lewd and lascivious charges (*id.* at 62-71).  Petitioner appealed his convictions and sentences to the Florida First District Court of Appeal (First DCA).  The appellate court affirmed Petitioner's convictions and sentences in a written opinion issued May 15, 2001 (Doc. 6, Ex. H).  Hanks v. State, 786 So. 2d 634 (Fla. 1st DCA May 15, 2001).  On June 14, 2001, the First DCA denied Petitioner's motion for rehearing and  request for certification to the Florida Supreme Court (Doc. 6, Exs. I, J).  Petitioner filed a notice to invoke discretionary jurisdiction of the Florida Supreme Court (Doc. 6, Ex. L).  The Florida Supreme denied review on December 18, 2001 (Doc. 6, Ex. P).  Hanks v. State, 808 So. 2d 807 (Fla. Dec. 18, 2001) (Table).

On December 23, 2002, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 6, Ex. Q).  Following an evidentiary hearing, the motion was denied on February 16, 2004 (Doc. 6, Exs. S, T).  Petitioner appealed the decision to the First DCA, and the First DCA affirmed the decision per curiam without opinion on October 28, 2004, with the mandate issuing December 23, 2004 (Doc. 6, Exs. Y, BB).  Hanks v. State, 888 So. 2d 23 (Fla. 1st DCA Oct. 28, 2004) (Table).

Petitioner filed the instant habeas action on March 2, 2005 (Doc. 1 at 6).

II.    TIMELINESS

Respondent argues that the instant petition is untimely.  Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment.  The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

In the instant case, Petitioner does not assert that a government-created impediment to his filing existed, that he bases any of his claims on a right newly recognized by the Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence prior to the date his conviction became final.  Therefore, the statute of limitations must be measured from the remaining statutory trigger, which is the date on which his conviction became final.  *See* 28 U.S.C. § 2244(d)(1).

Respondent contends that the federal limitations period began to run on August 15, 2001, ninety (90) days after the First DCA issued its opinion affirming Petitioner's convictions and sentences (*see* Doc. 6 at 4-5).  Petitioner argues that the limitations period did not begin to run until March 18, 2002, ninety (90) days after the decision of the Florida Supreme Court declining to accept jurisdiction (*see* Doc. 1, Memorandum of Law in Support of Petitioner for a Writ of Habeas Corpus, Pursuant to 28 U.S.C. § 2254 at 1-2).  This court agrees with Petitioner.  It is now well established that when a Florida defendant directly appeals his conviction, seeks discretionary review by the state supreme court, but does not seek certiorari review by the United States Supreme Court, the one-year limitations period for filing a federal habeas petition begins to run ninety (90) days after issuance of the state supreme court's decision.[2]  Bond v. Moore, 309 F.3d 770, 772-74 (11th Cir. 2002).  In the instant case, the Florida Supreme Court denied Petitioner's request for discretionary review on December 18, 2001.  Petitioner did not seek certiorari review in the United States Supreme Court.  Thus, Petitioner's one-year limitations period began to run on March 18, 2002, upon expiration of the 90-day period for seeking certiorari review.

---

[2]The 90-day period for filing in the United States Supreme Court a petition for writ of certiorari seeking review of a decision of a state appellate court runs from the date of the state court's opinion.  *See* Sup. Ct. R. 13.3.

This court must next address whether the limitations period was tolled pursuant to statutory tolling principles.  Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, the record shows that Petitioner filed a motion for postconviction relief in the state courts on December 23, 2002, after two hundred eighty (280) days of the federal limitations period had expired.  The motion was pending until December 23, 2004, upon issuance of the appellate court's mandate affirming the lower court's denial of the motion.  Petitioner filed his federal habeas petition on March 2, 2005, after sixty-eight (68) days had elapsed.  As only 348 days of the 365-day federal limitations period had expired at the time Petitioner filed his federal habeas petition, the petition was timely.

III.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
    (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119-20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding.  *See* Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the

---

[3]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S. Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and –-except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S. Ct. at 1518-1523).  The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404-06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Id. (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by

a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." Section 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." (dictum)); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

IV.      EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas

---

[4]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
            (A)  the applicant has exhausted the remedies available in the courts of the State; or
            (B) (i)  there is an absence of available State corrective process; or
                  (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365-66.  Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in

---

[5]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"   *Id.*   With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's

---

[6]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  Id..  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it

---

[7]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1301-02 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

is more likely than not that no reasonable juror would have convicted him."  <u>Schlup</u>, 513 U.S. at

327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent
> person is extremely rare.  To be credible, such a claim requires [a] petitioner to
> support his allegations of constitutional error with new reliable evidence -- whether
> it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical
> physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

V.      PETITIONER'S CLAIMS

    A.      <u>Ground one:  Ineffective assistance of counsel and deprivation of right to
confront a witness.</u>

Petitioner contends that his trial counsel provided ineffective assistance by stipulating to the

use of Dr. Samuel Moorer's deposition at trial without Petitioner's prior knowledge and consent,

thereby waiving Petitioner's right to confront Dr. Moorer, a "crucial" witness against him (Doc. 1

at 4).  Petitioner raised this ineffective assistance of counsel claim in his Rule 3.850 motion (*see*

Doc. 6, Ex. Q at 14-17); however, at the evidentiary hearing, counsel appeared to abandon the claim

(Doc. 6, Ex. S at 21).  The trial court denied the claim on the ground that Petitioner conceded that

the matter was raised and decided on direct appeal of his conviction (Doc. 6, Ex. T at 3).  Petitioner

did not appeal the trial court's decision on this issue to the First DCA (*see* Doc. 6, Ex. U).

Respondent contends that the state post-conviction court properly applied the state

procedural rule prohibiting defendants from raising issues in post-conviction motions that were

raised and decided on direct appeal (Doc. 6 at 9-10).  Additionally, Respondent states that Petitioner

presented his federal habeas claims in his direct appeal and post-conviction actions; thus, his claims

"appear to be properly exhausted" (*id*. at 6-7).  However, Respondent expressly states that it is not

abandoning procedural challenges to the petition (*id*. at 6).  Respondent argues that for a claim to

be properly exhausted, Petitioner must raise the exact same issue in the state court; and that a Florida

defendant must preserve allegations of trial court error by objecting at trial and raising the issue on

appeal and, as to other claims, he must avail himself of state post-conviction procedures and appeal

the denial of a post-conviction application to the state appellate court (*id*. at 6).

The state court record establishes that Petitioner raised two issues on direct appeal:  (1) whether the trial court committed fundamental error by permitting the introduction into evidence of Dr. Moorer's deposition, in lieu of trial testimony, where the defendant was not present during the deposition, and (2) whether the trial court erred by failing to make case-specific findings of reliability of hearsay by a child victim of sexual battery, pursuant to section 90.803(23) of the Florida Statutes (Doc. 6, Ex. E). Hanks, 786 So. 2d at 634.  On the first issue, the appellate court determined that by agreeing to the admission of Dr. Moorer's deposition testimony, defense counsel waived any claim of trial court error, and that Petitioner's personal, on-the-record waiver was not required. Hanks, 786 So. 2d at 636. Petitioner did not raise on direct appeal an independent ground of ineffective assistance of counsel based upon counsel's affirmative waiver of Petitioner's right to confront Dr. Moorer, and the appellate court did not decide this issue.  Therefore, this court concludes that Petitioner did not present his ineffective assistance of counsel claim on direct appeal.

Petitioner did, however, raise his ineffective assistance of counsel claim in his Rule 3.850 motion.  However, he did not appeal the trial court's application of the procedural bar to the First DCA (*see* Doc. 6, Ex. V).  In his initial brief appealing the trial court's decision denying his Rule 3.850 motion, Petitioner raised three issues:  (1) the trial court erroneously denied his claim that trial counsel should have objected to portions of Dr. Moorer's testimony on the ground that he gave improper opinion testimony, including an opinion that implied that Petitioner was guilty; (2) the trial court erroneously denied his claim that counsel failed to object to the sufficiency of the findings to admit child hearsay evidence, and (3) the trial court erroneously denied his claim that counsel failed to object to the exclusion of Petitioner's parents from the courtroom during part of the trial (*id.*). Petitioner did not raise the issue of the trial court's denying his claim that trial counsel improperly stipulated to the admission of Dr. Moorer's deposition testimony and written report (*see id.* at 19-23).  Although Petitioner argued in his reply brief to the First DCA that the trial court improperly determined that the claim was procedurally barred (*see* Doc. 6, Ex. X at 3), according to Florida law, this was too late.  *See* Atwater v. Crosby, 451 F.3d 799, 810 (11th Cir. 2006) (citing Gen. Mortgage Assoc., Inc. v. Campolo Realty & Mortgage Corp., 678 So. 2d 431, 431 (Fla. 1st DCA 1996) ("The fact that [an] issue was raised for the first time in the reply brief alone precludes our consideration of the matter.")).  Furthermore, Petitioner cannot now return to state court to appeal the Rule 3.850

court's denial of this issue, therefore, the claim is procedurally barred from federal habeas review. *See* Coleman, 501 U.S. at 735 n. 1.  Moreover, Petitioner has neither alleged nor shown cause and prejudice or actual innocence in order to excuse his default of this issue.  Therefore, the issue is not subject to review by this court.

Despite Petitioner's failure to exhaust this ineffective assistance of counsel claim, it is without merit.[8]  At the evidentiary hearing on Petitioner's Rule 3.850 motion, Petitioner's trial counsel, Mr. Steven Seliger, testified that he had been practicing exclusively criminal defense work for over 20 years (Doc. 6, Ex. S at 11-12).  He testified that he stipulated to the admission of Dr. Moorer's deposition testimony because he felt it was favorable evidence important to the defense theory that no sexual abuse occurred (Doc. 6, Ex. S at 15-16).  Mr. Seliger testified that he made a tactical decision that it was beneficial to the defense that the trial proceed with the presentation of Dr. Moorer's testimony through his deposition and report, than to proceed without Dr. Moorer's testimony, and that he would have sought a continuance of the trial to facilitate Dr. Moorer's presence if the State had not agreed to presentation of Dr. Moorer's testimony through his deposition (*id*. at 16-17).  In light of this evidence that counsel's decision was a matter of trial strategy, and Petitioner's failure to show that the decision was <u>not</u> tactical, this court must determine whether counsel's tactical decision was reasonable.

The trial record shows that the factual basis for Count I, the sexual battery charge, was that Petitioner penetrated the child's vagina with his finger (Doc. 6, Ex. A at 48, Ex. B at 53-54, 114-127).  The factual basis for Count II, the lewd and lascivious assault charge, was that Petitioner unlawfully handled or fondled the child's breasts (*id*., Ex. A at 48, Ex. B at 54-55, 114-127).  The factual basis for Count III, the lewd conduct charge, was that Petitioner enticed the victim to perform gymnastics when she was nude below the waist (*id*., Ex. A at 48-49, Ex. B at 55-56, 114-127).  The theory of the defense was that Petitioner never penetrated the child victim; if he touched the child's breasts, he never did so in a lewd, lascivious, or indecent manner; and it was not unusual for the child to perform the splits as part of her gymnastics training (Doc. 6, Ex. B at 53-56, 198-213, 223-

---

[8]A federal habeas claim may be denied on the merits, notwithstanding the failure of Petitioner to exhaust his state court remedies.  *See* 28 U.S.C. § 2254(b)(2).

26, 249-60).  Dr. Moorer testified, through his deposition that he is the medical director and an examining physician for the Child Protection Team and, as such, he examines children who have allegedly been abused or neglected (Doc. 6, Ex. B at 139-40).  He examined the child victim in Petitioner's case and found no physical indication of sexual abuse (*id*. at 140-41).  He observed some slight redness in the area of the child's external genitalia, but the examination was otherwise normal (*id*. at 141).  Dr. Moorer testified that the fact that there was no physical indication of penetration did not necessarily rule out the possibility that the child was penetrated (*id.* at 141-42).  Dr. Moorer provided three explanations for why the lack of physical signs did not rule out the possibility of penetration:  (1) penetration may have been attempted but not completed; (2) the hymen stretches, and "an amazing amount" of stretching can occur without any injury, and (3) based upon observations of children immediately after they have been penetrated and suffered injuries, a "considerable amount" of healing occurs without leaving a physical trace of the penetration (*id*.).  Dr. Moorer testified that most forms of sexual molestations would not be expected to leave a physical trace (*id*. at 143).  Defense counsel referred to Dr. Moorer's testimony during closing argument to support the defense theory that no sexual abuse occurred (*id*. at 251-52).

Upon review of the record, this court concludes that defense counsel's tactical decision to stipulate to admission of Dr. Moorer's deposition, thereby waiving Petitioner's right to confront Dr. Moorer, was reasonable.  In his deposition, Dr. Moorer stated that there were no physical signs of sexual abuse on the child victim, and this testimony supported the defense theory that no sexual abuse occurred, even though the testimony also included the qualification that the lack of physical evidence did not mean that sexual abuse did not occur.  In light of this benefit to the defense, albeit qualified, Petitioner has failed to demonstrate that no reasonable lawyer would have stipulated to admission of the deposition testimony.

Furthermore, Petitioner has failed to show he was prejudiced by counsel's stipulating to admission of the deposition.  At the evidentiary hearing on Petitioner's post-conviction motion, Petitioner agreed that the theory of defense in his case was that he did not have sexual contact with the child victim (Doc. 6, Ex. S at 7).  He also agreed that evidence from a doctor that the child did not have any physical indication of sexual abuse was favorable to his defense, and that he wanted that information brought out by his attorney at trial (*id*.).  Obviously, the only way that this

information could have been presented to the jury was through Dr. Moorer's live testimony or, alternatively, admission of his pre-trial deposition.  Petitioner does not allege that his counsel did not have a sufficient opportunity to cross-examine Dr. Moorer during the deposition or that additional information would have been brought out if Dr. Moorer had testified in person at trial. Therefore, he has failed to establish a reasonable probability that the result of his trial would have been different if counsel had not stipulated to admission of Dr. Moorer's deposition, as opposed to delaying the trial until Dr. Moorer was available.  Accordingly, Petitioner is not entitled to federal habeas relief.

      B.    Ground two:  Ineffective assistance of counsel:  failure to object to improper opinion testimony by an expert witness.

Petitioner contends his counsel provided ineffective assistance by failing to object to  the following testimony of Dr. Moorer:  (1) a lack of physical evidence does not mean that abuse did not occur, and (2) in many cases, there is abuse even though there is no physical evidence (Doc. 1 at 4, Appx. I at 18).   Petitioner argues that this testimony was inadmissible because it was speculative in that it did could not be applied to the facts of his case (Doc. 1, Appx. I at 18-19). Furthermore, the testimony exceeded the scope of Dr. Moorer's expertise because it was not based upon statistical studies of abuse cases, rather, it was based upon his own personal beliefs (*id*. at 19). Additionally, Petitioner contends that the testimony contained an "indirect opinion" that Petitioner was guilty based upon the afore-described inferences (*id*.).

      1.     Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687-88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S. Ct. 2104, 158 L. Ed. 2d 718 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be

satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial--for example, what witnesses he presented or did not present--were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314-15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

Moreover, "[c]ounsel will not be deemed unconstitutionally deficient because of tactical decisions." McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir.1984) (citations omitted); Crawford, 311 F.3d at 1312 ("Deliberate choices of trial strategy and tactics are within the province of trial counsel after consultation with his client. In this regard, this court will not substitute its judgment for that of trial counsel.") (quotation marks, internal alteration, and citation omitted). There is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable strategy. Rogers, 13 F.3d at 386; see also Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004), cert. denied, 474 U.S. 1038-, 125 S. Ct. 1703, 161 L. Ed. 2d 531 (2005). "[T]here are no 'absolute rules' dictating what reasonable

performance is or what line of defense must be asserted." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence -- which is also constitutionally protected -- and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

      2.     Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (Doc. 6, Ex. Q at 17-20). The state court denied the claim on the ground that Petitioner's assertion that Dr. Moorer's testimony contained an opinion that Petitioner was guilty was not supported by the record (Doc. 6, Ex. T at 3). Furthermore, the state court found that the expert opinions expressed by Dr. Moorer were within his field of expertise and did not suggest that Defendant was guilty (*id.*). Therefore, the court concluded that Petitioner failed to establish that counsel performed deficiently (*id.* at 5).

Although the state court did not identify the governing legal principle it applied to Petitioner's claim, the following discussion demonstrates that its adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, <u>Strickland</u>.

The trial transcript supports the state court's determination that Dr. Moorer's statements were within his field of expertise and did not suggest that Petitioner was guilty. Dr. Moorer's testimony that a lack of physical evidence did not mean that abuse did not occur, and that in many cases abuse occurred despite the lack of physical evidence, was not speculative of whether sexual abuse occurred in Petitioner's case, nor was it a suggestion of Petitioner's guilt; rather, it was an opinion as to whether the results of the child victim's physical examination was consistent with her allegations of sexual abuse. Furthermore, Dr. Moorer's testimony in this regard was not beyond the scope of his expertise as he testified that he is the medical director and an examining physician for the Child Protection Team and, as such, he examines children who have allegedly been abused or neglected. Petitioner failed to show that his counsel had a meritorious basis for objecting to Dr. Moorer's testimony on the grounds suggested by Petitioner; therefore, counsel's failure to lodge the objections was not unreasonable. *See* <u>Thomas v. Newsome</u>, 821 F.2d 1550 (11th Cir. 1987) (because habeas petitioner did not have meritorious Fourth Amendment claim, he could not meet <u>Strickland</u> standard to prevail on claim that counsel was ineffective for not challenging his arrest).

C.      Ground three:  Ineffective assistance of counsel:  failure of counsel to object
        to admission of child hearsay testimony pursuant to Section 90.803(23), Florida
        Statutes.

Petitioner claims that his counsel provided ineffective assistance by failing to object to the
sufficiency of the trial court's findings with regard to the admissibility of hearsay statements of the
child victim on the ground that the trial court merely referred to the criteria set forth in section
90.803(23), Florida Statutes, or referred to other matters, without making case specific findings
supporting the reliability determination (Doc. 1 at 5, Appx. I at 21-24).  Petitioner contends he
suffered prejudice as a result of counsel's failure to object because he would have prevailed on his
direct appeal if counsel had properly preserved the issue for review (Doc. 1, Appx. I at 24).

        1.      Clearly Established Supreme Court Law

The Supreme Court standard for analyzing claims of ineffective assistance of counsel is set
forth *supra*.

        2.      Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (Doc. 6, Ex. Q at 21-24).  The state
court denied the claim on the ground that the trial record showed that Petitioner's counsel did timely
object to the admission of the hearsay statements on the ground that there was not sufficient indicia
of reliability (Doc. 6, Ex. T at 3).  Furthermore, after the trial court ruled on admissibility of the
statements, defense counsel renewed his objection on at least four occasions (*id.*).  Based upon these
findings, the trial court concluded that Petitioner failed to establish that his counsel's performance
was deficient (*id*. at 5).

This court's review of the trial record confirms the state post-conviction court's finding that
defense counsel objected to admissibility of the child victim's hearsay statements on the grounds
that there were insufficient indicia of reliability of the statements and that the probative value of the
statements would be substantially outweighed by the prejudicial effect (Doc. 6, Ex. B at 25-26, 28-
29).  After the trial court ruled that the hearsay statements were reliable, defense counsel
contemporaneously objected to admission of the hearsay statements during introduction of the
statements through the testimony of the victim's mother and the testimony of the Child Protection
Team investigator who interviewed the child on videotape, on the same grounds as he articulated

in his initial objection, specifically, insufficient indicia of reliability and unduly prejudicial effect (*see* Doc. 6, Ex. B at 65, 137, 150-51, 178).

Counsel's failure to articulate his objection in terms of the sufficiency of the trial court's findings under section 90.803(23) in order to preserve the issue for appellate review was not unreasonable.  Initially, Petitioner's contention that the state appellate court determined that trial counsel failed to preserve the issue for review is a mischaracterization of the state court's decision. On direct appeal of his conviction, Petitioner argued in his initial brief that the trial court failed to make case specific findings of reliability of the child's hearsay statements (Doc. 6, Ex. E at 18-20). In its answer brief, the State argued that Petitioner failed to preserve the issue for appeal and, furthermore, the trial court's findings were sufficient to admit the hearsay statements (Doc. 6, Ex. F at 11-13).   In his reply brief, Petitioner expressly stated that he was raising the issue as fundamental error because the issue of whether the hearsay statements were admissible went to the merits of the foundation of the State's case (Doc. 6, Ex. G at 6).   In its decision affirming Petitioner's conviction, the First DCA noted that <u>Petitioner</u> characterized the trial court error as one of fundamental error, then the court rejected Petitioner's claim of fundamental error on the ground that "a trial court's failure to make sufficient findings under section 90.803(23) in and of itself does not constitute fundamental error."   <u>Hanks v. State</u>, 786 So. 2d 634, 634-35 (Fla. 1st DCA 2001) (citing <u>Anderson v. State</u>, 655 So. 2d 1118, 1119 (Fla. 1995)) (emphasis added).  The fact that Petitioner raised the claim of trial court error as fundamental error on direct appeal does not constitute a finding by the appellate court that trial counsel failed to preserve the issue for appellate review.

Furthermore, Florida law suggests that counsel's objections to admission of hearsay statements on ground that there were not sufficient indicia of reliability of the statements, made prior to trial court's findings of reliability and renewed at the time the State offered the hearsay statements into evidence, was sufficient to put the parties and trial court on notice that counsel was objecting to the legal sufficiency of the trial court's findings of reliability, thereby preserving the issue for appellate review.  *See* <u>Hopkins v. State</u>, 632 So. 2d 1372, 1376 (Fla. 1994) (". . . defense counsel's objection to the reliability of the evidence [in the form of a hearsay objection] necessarily encompassed the sufficiency of the judge's findings as to that reliability.  Counsel was not required

to specify each finding of fact to which he was objecting.") (footnote omitted); <u>Barton v. State</u>, 704 So. 2d 569, 575 (Fla. 1st DCA 1997) (issue of sufficiency of trial court's findings concerning reliability and admissibility of child's hearsay statements was preserved for appellate review where counsel objected to sufficiency of trial court's first findings, even though counsel did not renew objection after trial court made second findings in response to the objection); <u>Mathis v. State</u>, 682 So. 2d 175, 177 (Fla. 1st DCA 1996) (defense counsel's objection to trial court's findings concerning reliability of child's hearsay statements was sufficient to preserve issue of legal sufficiency of trial court's findings regarding reliability even though defense counsel did not make contemporaneous objection when State offered hearsay statements at trial because the parties and the trial court were put on notice that the objection was to the legal sufficiency of the trial court's findings); <u>In Interest of R.L.R.</u>, 647 So. 2d 251, 253 (Fla. 1st DCA 1994) (defense counsel preserved for appellate review the issue of the sufficiency of the trial court's findings under section 90.803(23) where counsel objected to State's questioning of witness at trial as to what child told him on the ground that the question sought to elicit hearsay statements of the child and that the statements were inadmissible under section 90.803(23), trial court reserved ruling on objection until others witnesses testified, counsel made similar objections to testimony from other witnesses, and trial court's ruling manifested cognizance that, before testimony could be admitted, court was required to find that time, content, and circumstances of statements provided sufficient safeguards of reliability and court was required to make specific findings of fact, on the record, as to the basis for its ruling); *see also* <u>State v. Townsend</u>, 635 So. 2d 949, 959 (Fla. 1994) (finding it questionable whether defendant properly preserved issue of failure of trial court to make specific factual findings regarding reliability of child's hearsay statements where there was no indication that defense counsel objected at pre-trial hearing pursuant to section 90.803(23) to trial court's determination that hearsay statements were sufficiently reliable to allow admission at trial, and there was no indication that counsel contemporaneously objected to admission of hearsay statements at the time the statements were offered by the State at trial); <u>Griffith v. State</u>, 723 So. 2d 860, 863 (Fla. 1st DCA 1998) (defense counsel's objection following proffer of witness's testimony regarding what child told her and similar objection made after witness testified before jury was inadequate to preserve issue of legal sufficiency of trial court's determination of admissibility of hearsay statements under section

90.803(23) where counsel's objection was based upon witness's qualifications to testify as an expert and not on hearsay grounds).

Because Petitioner has failed to establish that counsel's failure to articulate his objection in terms of the sufficiency of the trial court's findings under section 90.803(23) in order to preserve the issue for appellate review was unreasonable, he has failed to satisfy the deficient performance prong of the Strickland standard.

Furthermore, even if this court assumed for discussion purposes that counsel's objection was not sufficiently specific to alert the trial judge that counsel was objecting to the legal sufficiency of his findings under section 90.803(23), Petitioner has failed to satisfy the prejudice prong of the Strickland standard.  Petitioner argues that if counsel had properly objected to the sufficiency of the trial court's findings under section 90.803(23), the issue would have been preserved for direct appeal.  However, as discussed *infra*, the proper gauge for prejudice concerning errors of counsel at the guilt stage of a trial is whether there is a reasonable probability of a different result at trial, not on appeal.  Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006), *petition for cert. filed*, --- U.S.L.W. --- (U.S. Sep. 5, 2006) (No. 06-6402) (citing Strickland, 466 U.S. at 694-95).  In the instant case, Petitioner has failed to allege or show that the trial judge would have overruled an objection to the sufficiency of his findings if this specific objection had been made.  There is as much reason to believe that pointing out this alleged error to the judge would have caused him to make more specific findings, thereby depriving Petitioner of the issue on appeal.  Moreover, Petitioner has failed to demonstrate a reasonable probability that a juror would have had reasonable doubt about his guilt if the child's hearsay statements had not been admitted.  The convincing testimony of the child victim, as well as the testimony of the victim's father that Petitioner told him, upon being confronted with the allegations, "It's not what you think," and then admitted to a law enforcement officer that he fondled the victim's breasts, was sufficient to remove any reasonable doubt from the minds of the jury.  Because Petitioner has failed to satisfy his burden under Strickland, he is not entitled to federal habeas relief on this claim.

      D.    Ground four:  Ineffective assistance of counsel:  failure to object to closure of courtroom to public.

Petitioner next claims that his counsel provided ineffective assistance by failing to object to the closure of the courtroom to the public and Petitioner's family during the testimony of the child victim without first conducting a hearing, as required by Waller v. Georgia, 467 U.S. 39, 104 S. Ct. 2201, 81 L. Ed. 2d 31 (1984) (Doc. 1 at 5, Appx. I at 24-25).  He contends that if defense counsel had objected, thereby preserving the issue for direct appeal, Petitioner would have prevailed on this issue on direct appeal (*id.*, Appx. I at 25).

        1.       Clearly Established Supreme Court Law

The clearly established Supreme Court law applicable to claims of ineffective assistance of counsel is set forth *supra.*

        2.       Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (Doc. 6, Ex. Q at 24-25).  The state court denied the claim on the following grounds:

> In support of his motion, Defendant's parents testified.  Defendant's mother testified that some unidentified person asked her and her husband to leave the courtroom and they did so.  Defendant's father also testified that some unidentified person asked him to leave the courtroom and he did.  Defendant claims that his parents' leaving the courtroom when the child victim testified, and his attorney not objecting, constituted ineffective assistance of counsel and denied Defendant his right to a public trial.  Clearly, the record is absent of anyone's requiring or even suggesting that Defendant's parents be required to leave the courtroom during the testimony of the child victim.  Had the Court instructed Defendant's parents to leave the courtroom perhaps defense counsel would have had the responsibility to object.  What Defendant now argues is that defense counsel has a duty to be aware of all activities in the courtroom -- not only in front of the bar, but also in the audience as well.  To impose such an obligation on defense counsel would not only be overly burdensome, but would detract from his primary obligation of concentrating on the trial.  Defendant has failed to demonstrate that trial counsel's ineffectiveness or his parents' absence from the courtroom affected the fairness of his trial.

(Doc. 6, Ex. T at 4-5) (citations to the transcript of the evidentiary hearing omitted).

The Eleventh Circuit recently considered an identical claim in Purvis v. Crosby, 451 F.3d 734 (11th Cir. 2006), *petition for cert. filed*, --- U.S.L.W. --- (U.S. Sep. 5, 2006) (No. 06-6402).  In that case, the federal habeas petitioner sought to have his conviction for child molestation set aside because his trial counsel did not object when the state trial court cleared the courtroom of most of the public during the young victim's testimony.  *Id.* at 735.  The Eleventh Circuit determined that

the most efficient way to decide the ineffective assistance of counsel claim was to "assume away three subsidiary issues and get straight to the prejudice question." *Id.* at 738. The court assumed that the closing of the courtroom during the victim's testimony was constitutional error under <u>Waller</u>, thereby putting aside any questions about whether it was proper under the test set out in the <u>Waller</u> decision. *Id.* The court also assumed that trial counsel's failure to object to the partial closure of the courtroom was "outside the wide range of professionally competent assistance," thereby putting aside any questions about the performance prong of the ineffective assistance of counsel claim. *Id.* (citing <u>Strickland</u>, 466 U.S. at 689). Finally, the court assumed that the state post-conviction court's phrasing of the prejudice test as whether there is "a reasonable likelihood" that counsel's error "impacted the outcome of the trial," instead of using the more technically accurate "a reasonable probability of a different result" standard, took the case outside the scope of 28 U.S.C. § 2254(d)(1). <u>Purvis</u>, 451 F.3d at 738 (citing <u>Strickland</u>, 466 U.S. at 694). This third assumption put aside the question of whether the court owed any deference to the state court decision.

Even with those three assumptions, the Eleventh Circuit reached the same result as the state court; the habeas petitioner lost on the ineffective assistance claim because he has not established that he was prejudiced by his trial counsel's failure to object to the closure of the courtroom. <u>Purvis</u>, 451 F.3d at 738. The court reiterated the prejudice standard applicable to claims of defective performance at the guilt stage: "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* (citing <u>Strickland</u>, 466 U.S. at 695). The court then analyzed Purvis' claim as follows:

> Purvis cannot show that an objection from his counsel would have caused the factfinder to have a reasonable doubt about his guilt. If counsel had objected in a timely fashion and had persuaded the trial judge not to partially close the courtroom, there is no reason to believe that would have changed the victim's testimony in a way which would have created a reasonable doubt in the jury's mind. The victim could just as well have been a more sympathetic or credible witness if forced to testify publicly. We do not know, and when we do not know the party with the burden loses, and here that party is Purvis. *See* <u>Strickland</u>, 466 U.S. at 694, 104 S.Ct. at 2068 ("The defendant must show . . . .").

> Against this logic Purvis argues that an objection by his trial counsel would have preserved the issue for appeal and led to a reversal of his conviction, which

would have been a different result from the affirmance that occurred.  There are two flaws with this argument.  One is its assumption that the trial judge would have overruled an objection if one had been made.  There is as much reason to believe that pointing out the error of his ways to the trial judge would have caused him to mend those ways, thereby depriving Purvis of the issue on appeal.  The second and more fundamental flaw in this argument is that it focuses on the outcome of the appeal, not of the trial.  The Supreme Court in Strickland told us that when the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial:  whether there is a reasonable probability of a different result at trial, not on appeal.  *Id.* at 694-95, 104 S.Ct. at 2068-69.

*Id.* at 738-39.  The Eleventh Circuit went on to reject Purvis' contention that he was not required to establish prejudice because an error in removing the public from the courtroom during a trial is a "structural defect."  *Id.* at 739.  The court assumed for purposes of discussion that a partial closure of the courtroom was a structural error or defect, but determined that because the ineffective assistance circumstances did not fall under the three "exceptional circumstances" identified by the Supreme Court in Strickland as warranting a presumption of prejudice, Purvis was required to establish prejudice resulting from his counsel's error.[9]  *Id.* at 740-43.

The Purvis decision dictates the determination of Petitioner's claim in the instant case. Initially, Petitioner has failed to show that the trial court's closure of the courtroom was complete. Petitioner states that prior to the child victim's testimony, the trial court stated:

> I want to make sure the people that are not supposed to be in here for the next witness are not in here.  You're more than welcome to come back after this next witness testifies.

(Doc. 1, Appx. I at 24-25).  Petitioner concedes that the record does not indicate how many members of the public were excluded and states that the court "obviously excluded some members of the public" (*id.* at 25).  However, even if the closure was only partial, this court, like the Eleventh Circuit, will assume the following for purposes of discussion:  (1) that the closing of the courtroom during the victim's testimony was constitutional error under Waller; (2) that trial counsel's failure to object to the partial closure of the courtroom was "outside the wide range of professionally

---

[9]Those three "exceptional circumstances" are the following:  (1) "actual or constructive denial of the assistance of counsel altogether," (2) "various kinds of state interference with counsel's assistance," and (3) where counsel "is burdened by conflicting interests arising from multiple representation situations," and counsel's performance is affected by the conflict.  Purvis, 451 F.3d at 740-41 (citing Strickland, 466 U.S. at 692).

competent assistance," (3) that the state post-conviction court's phrasing of the prejudice test as whether counsel's error "affected the fairness of his trial" instead of using the more technically accurate "a reasonable probability of a different result" standard, took the case outside the scope of 28 U.S.C. § 2254(d)(1), thereby putting aside the question of whether this court owes any deference to the state court decision, and (4) that partial closure of the courtroom constituted a structural error or defect.

Even in the context of these assumptions, Petitioner cannot show a reasonable probability that an objection from his counsel would have caused a juror to have a reasonable doubt about his guilt.  If counsel had objected in a timely fashion and had persuaded the trial judge not to partially close the courtroom, there is no reason to believe that would have changed the child victim's testimony in a way which would have created a reasonable doubt in the jury's mind.  The victim could just as well have been a more sympathetic or credible witness if forced to testify publicly. Because Petitioner has failed to satisfy his burden in this regard, his claim fails under Strickland. Furthermore, the Purvis decision squarely foreclosed Petitioner's contention that he established prejudice by showing that he would have prevailed on the Waller issue on direct appeal if counsel had properly preserved it at trial.  Purvis, 451 F.3d at 739.  As the Eleventh Circuit stated, prejudice is gauged against the outcome of the trial:  whether there is a reasonable probability of a different result at trial, not on appeal.  *Id.*

In sum, Petitioner has failed to demonstrate entitlement to federal habeas relief on any of his claims, therefore, the petition should be denied.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James Crosby as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this <u>30th</u> day of October 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**